IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-395-KS

| | | |
|---|---|---|
| RONNIE EDWARD GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| FRANK BISIGNANO, Commissioner | ) | |
| of Social Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' briefs pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), the parties having consented to proceed pursuant to 28 U.S.C. § 636(c). Ronnie Edward Green ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of his application for supplemental security income (SSI). The time for filing responsive briefs has expired, and the matter is ripe for adjudication. Having carefully reviewed the administrative record and the parties' briefs, the court reverses the Commissioner's decision and remands the matter to the Commissioner for further proceedings pursuant to sentence four of § 405(g).

---

[1] Frank Bisignano became Commissioner on May 7, 2025, and is therefore substituted as Defendant pursuant to Fed. R. Civ. P. 25(d).

## STATEMENT OF THE CASE

Plaintiff applied for SSI on May 26, 2021, with an alleged onset date of April 11, 2021. (R. 884, 1067–73.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 884, 948, 959, 976–78.) A telephonic hearing was held on October 18, 2023, before Administrative Law Judge ("ALJ") Ashley Bumgarner, who issued an unfavorable ruling on December 12, 2023. (R. 884–938.) On May 22, 2024, the Appeals Council denied Plaintiff's request for review. (R. 1–7.) At that time, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. On July 9, 2024, Plaintiff initiated this action, seeking judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations

2

omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 416.920(a)(4); *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*. In making this determination, the ALJ must decide "whether the claimant is able to

perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). "If the Commissioner meets [this] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015).

### III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). (R. 884.) At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since May 26, 2021, the application date. (R. 886.) Next, the ALJ determined Plaintiff has the severe impairments of ventral hernia, diabetes mellitus with neuropathy, heart failure with preserved ejection fraction, hypertension, obesity, and major depressive disorder. (*Id.*)

At step three, the ALJ concluded Plaintiff's impairments are not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 887.) The ALJ expressly considered Listings 1.18, 4.02, and 12.04. (R. 887–90.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff has

> the residual functional capacity to perform light work as defined in 20 CFR 416.67(b) except [Plaintiff] can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. He can sit for six hours in an eight-hour workday, as well as stand and/or walk for six hours in an eight-hour workday. [Plaintiff] can climb ramps and stairs as well as climb ladders, ropes, or scaffolds frequently. He can frequently balance

4

as defined in the SCO, as well as frequently stoop, kneel, crouch, and crawl. He should have no more than occasional exposure to workplace hazards such as moving mechanical parts or unprotected heights. [Plaintiff] could understand, remember and carry out simple instructions and use judgement to make simple, work-related decisions and can sustain concentration, attention, and pace sufficient to carry out those simple instructions for two-hour intervals over the course of an eight-hour workday. He could have frequent contact with supervisors and coworkers but should not have more than occasional contact with the public. [Plaintiff] can deal with no more than occasional changes in a routine work setting and should work at a production rate or pace.

(R. 890–91.) In making this assessment, the ALJ stated that she considered Plaintiff's symptoms and the evidence (both "objective medical" and "other") based on the requirements of 20 C.F.R. § 416.929, and SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017), and found Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms "inconsistent with the medical evidence of record" and "not entirely consistent with the . . . other evidence in the record." (R. 891.)

At step four, the ALJ concluded that Plaintiff is not able to perform any past relevant work. (R. 896.) At step five, the ALJ determined, based upon Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, namely: router (DOT #222.587-038), stock checker (DOT #299.667-014), and marker (DOT #209.587-034). (R. 897.) The ALJ concluded that Plaintiff has not been disabled under the Act since May 26, 2021, the date of Plaintiff's application. (*Id.*)

5

## IV. Plaintiff's Arguments

On review, Plaintiff raises two arguments:

(A) The Appeals Council erred by failing to consider evidence Plaintiff submitted after the ALJ's decision as new and material, namely a putative medical opinion from Plaintiff's cardiologist written in March 2024 (Pl.'s Br. [DE #14] at 7–9); and

(B) The ALJ conducted an improper evaluation of Plaintiff's statements regarding his symptom severity pursuant to 20 C.F.R. § 416.929 and SSR 16–3p (Pl.'s Br. at 9–13).

As to the first argument, the Commissioner contends that the letter from Plaintiff's cardiologist is not a medical opinion, the letter does not provide new or material evidence that was likely to change the outcome, and the letter does not undermine whether substantial evidence supports the ALJ's decision. (Comm'r's Br. [DE #16] at 8–15.) As to the second argument, the Commissioner contends the ALJ conducted a proper evaluation of Plaintiff's symptom-severity statements. (*Id.* at 15–20.) For the reasons explained below, the court agrees with Plaintiff as to the first argument and therefore orders remand to the Commissioner.

### A. New Evidence Submitted to the Appeals Council

The Appeals Council will grant review if, among other things, it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470(a)(5). In this context, "[e]vidence is new if it is not duplicative or cumulative and is material if there is a reasonable [probability] that the new evidence would have changed the outcome." *Parham v. Comm'r of SSA*, 627 F. App'x 233, 233 (4th Cir. 2015) (per

6

curiam) (quoting *Meyer v. Astrue*, 662 F.3d 700, 705 (4th Cir. 2011)).[2] Newly submitted evidence is considered on review to the extent it informs whether substantial evidence supports the Commissioner's decision. *Parham*, 627 F. App'x at 233 (citing *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc), and *Meyer v. Colvin*, 754 F.3d 251, 257 (4th Cir. 2014)).

The newly submitted evidence at issue here is a March 2024 letter from Dr. Idil Aktan, Plaintiff's treating cardiologist. (R. 259.) In relevant part, the letter states:

> I have been the primary cardiologist for [Plaintiff] since his hospitalization in August 2023. I see him in outpatient clinic and have been his physician during his three heart failure hospitalizations. He has heart failure with preserved ejection fraction secondary to hypertensive heart disease. During his hospital admissions he presents with NYHA functional class III symptoms. He has been admitted February 11-27, 2024 and March 10-20, 2024 for heart failure exacerbations. He is now being monitored closely by the advanced HF clinic[] at UNC Rex.
>
> If you have questions, please do not hesitate to contact me.

(*Id.*) The Appeals Council stated that the letter from Dr. Aktan "does not show a reasonable probability that it would change the outcome of the decision" and declined to "exhibit [the letter]." (R. 2.)

The Commissioner makes the following arguments in response to Plaintiff's brief:

- Plaintiff's argument is an unqualified interpretation of medical literature (Comm'r's Br. at 9);

---

[2] The burden of showing materiality has been increased from "reasonable possibility" to "reasonable probability" via updates to the relevant regulations in January 2017. *See Laxton v. Berryhill*, No. 1:18-CV-446, 2019 WL 2516841, at *6 n.3 (M.D.N.C. May 29, 2019) (explaining change), *R. & R. adopted*, 2019 WL 2516442 (M.D.N.C. June 18, 2019).

7

- The information in the Aktan letter relates to treatment outside the relevant time period (*id.*);

- The Aktan letter is not a medical opinion pursuant 20 C.F.R. § 416.913(a)(2) (*id.* at 10 & n.4);

- The information in the Aktan letter is duplicative (*id.* at 9); and

- Substantial evidence supports the ALJ's decision (*id.* at 11–15 ((relying primarily on *Wiebusch v. Comm'r of SSA*, No. 20-1590, 2022 WL 2965653 (4th Cir. July 27, 2022) (per curiam), and *Locklear v. Kijakazi*, No. 7:20-CV-120-M, 2022 WL 1132156 (E.D.N.C. Feb. 28, 2022), *M. & R. adopted*, 2022 WL 944625 (E.D.N.C. Mar. 29, 2022)).

The court rejects these arguments for the reasons explained below.

The NYHA functional classification system for heart failure is, according to the American Heart Association, "the most commonly used classification system for heart failure." *Whitaker v. Colvin*, No. 4:13-CV-256-BO, 2015 WL 306984, at *1 n.1 (E.D.N.C. Jan. 21, 2015); Classes and Stages of Heart Failure, American HeartAssociation, https://www.heart.org/en/health-topics/heart-failure/what-is-heart-failure/classes-of-heart-failure (last visited Sept. 19, 2025). *See also* Nowell M. Fine & Jonathan G. Howlett, Heart Failure (HF), Merck Manual Professional Version (April 2025) ("Clinical severity [of heart failure] varies significantly and is usually classified according to the New York Heart Association (NYHA) system . . . ."), https://www.merckmanuals.com/professional/cardiovascular-disorders/heart-failure/heart-failure-hf?query=nyha%20classification%20of%20heart%20failure (last visited Sept. 17, 2025). Designation of Class III heart failure under the NYHA functional classification system "is characterized by marked limitation of physical activity, being comfortable at rest, and less than ordinary physical activity resulting in fatigue, palpitation, and dyspnea (shortness of breath)." *Davis v. Kijakazi*, No.

8

5:20-CV-459-RJ, 2022 WL 524777, at *5 n.5 (E.D.N.C. Feb. 22, 2022) (first citing the American Heart Association's website explaining the NYHA classification system; and then citing *Thomas v. Saul*, No. 3:18-CV-700, 2019 WL 3801850, at *10 (E.D. Va. July 25, 2019), *M. & R. adopted*, 2019 WL 3779515 (E.D. Va. Aug. 12, 2019)); *see also Cochran v. Kijakazi*, No. 1:21-CV-143-MR, 2022 WL 4099745, at *4–5 (W.D.N.C. Sept. 7, 2022) (explaining NYHA Class III meaning and citing *Erwin v. Saul*, No. 0:20:CV-2761-DCC-PJG, 2021 WL 4342099, at *4 (D.S.C. Aug. 26, 2021), *R. & R. adopted*, 2021 WL 4338979 (D.S.C. Sept. 23, 2021)). Accordingly, the court rejects the Commissioner's argument that Plaintiff is merely offering his own interpretation of medical literature.

The information contained in the Aktan letter is not outside the relevant time period. The Commissioner argues that the Aktan letter relates "to Plaintiff's treatment after the relevant time period of [Plaintiff's] claim" and that the Appeals Council "reasonably found that this evidence '[did] not relate to the period at issue.'" (Comm'r's Br. at 9, 11.) First, the court disagrees that the Appeals Council found that the Aktan letter did not relate to the period at issue. The Appeals Council expressly separated its analysis of the Aktan letter from its analysis of additional medical records Plaintiff submitted after the ALJ's decision. (R. 2.) While the Appeals Council stated that the additional medical records did not relate to the period at issue, it did not say that about the Aktan letter. (*Id.*) Moreover, the letter expressly references Dr. Aktan's treatment of Plaintiff "since [Plaintiff's] hospitalization in August 2023." (R. 259.) Thus, the Aktan letter "relates to the period on or before the date of the

9

[ALJ's] decision." 20 C.F.R. § 416.1470(a)(5); *see also Bird v. Comm'r of SSA*, 699 F.3d 337, 342 (4th Cir. 2012) (holding that, in the context of disability insurance benefits claims, failure to retrospectively consider medical evidence created after a claimant's date last insured but linked to the relevant time period can be error), *abrograted on other grounds by Rogers v. Kijakazi*, 62 F.4th 872, 878–80 (4th Cir. 2023); *Green v. Colvin*, 61 F. Supp. 3d 562, 567 (W.D. Va. 2014) ("It is well settled that evidence developed after termination of insured status may be relevant to prove disability before the date last insured.").

The information contained in the Aktan letter constitutes a medical opinion. Courts have previously ruled that failure to discuss a physician's impression or characterization of a claimant's heart failure under the NYHA functional classification system can frustrate review. *See, e.g., Cochran*, 2022 WL 4099745, at *4–5 (first citing *Erwin*, 2021 WL 4342099, at *4; and then citing *Perkins v. Astrue*, 498 F. App'x 641, 643 (7th Cir. 2013) (table)). Furthermore, to the extent there was any question that Dr. Aktan's letter qualified as a medical opinion under 20 C.F.R. § 416.913(a)(2), that could have been clarified by contacting Dr. Aktan. *See* 20 C.F.R. § 416.920b(b)(2)(i) (Commissioner may attempt to resolve inconsistent or insufficient evidence by "recontact[ing] [a claimant's] medical source"); (R. 259 (Dr. Aktan stating "please do not hesitate to contact me" if there are questions about her letter)); *cf. Oakes v. Kijakazi*, 70 F.4th 207, 213–14 (4th Cir. 2023) (holding that is error for an ALJ to dismiss a consultative examiner's opinion when there are "easily curable grounds" to clarify the opinion).

The information contained in the Aktan letter, especially the statement about Plaintiff's classification under the NYHA functional classification system, is not duplicative. As Plaintiff notes, Dr. Aktan's opinion about the classification of Plaintiff's heart failure under the NYHA functional classification system does not appear anywhere else in the record evidence. (Pl.'s Reply [DE #19] at 3.) Such information appears relevant to the ALJ's finding that Plaintiff does not meet the criteria for Listing 4.02. (R. 889 (ALJ stating that "despite [Plaintiff's admission] to cardiology during his hospitalization in August 2023, there is no indication that he fulfills the requirements of 4.02(A) or (B)"); 20 C.F.R. Part 404, Subpt. P, App. 1, § 4.00D(2)(b) ("To establish that you have *chronic* heart failure, your medical history and physical examination should describe characteristic symptoms . . . ."), § 4.00D(2)(b)(i) (noting that "[s]ymptoms of congestion or of limited cardiac output include easy fatigue, weakness, shortness of breath (dyspnea), cough, or chest discomfort at rest or with activity"), § 4.02 (cross-referencing § 4.00D(2)). Indeed, Dr. Aktan's statement in the letter that Plaintiff presented with NYHA Class III symptoms during Plaintiff's hospital admissions is inconsistent with the ALJ's statement that there is no indication Plaintiff meets the criteria for Listing 4.02. It also appears materially inconsistent with the RFC assessed by the ALJ. *Compare* (R. 890–91) *with* (R. 259); *see* SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996) (ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved"). The court recognizes that "other record evidence credited by the ALJ conflicts with the new evidence." *Meyer*, 662 F.3d at

11

707. Accordingly, remand is necessary so that the Commissioner, via the Appeals Council or the ALJ, may consider the new evidence and engage in the requisite fact finding.³ *See id.* (remanding because "no fact finder has made any findings as to the treating physician's opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in the record").

The two cases relied upon by the Commissioner in his substantial evidence argument are distinguishable. In *Wiebusch*, 2022 WL 2965653, the new medical opinion evidence (i) conflicted with the claimant's own hearing testimony, (ii) tied the medical opinion to the claimant's medication noncompliance, and (iii) conflicted with the medical provider's own treatment notes and therefore did not undermine the substantial evidence finding. *Wiebusch*, 2022 WL 2965653, at *4–5. These factors do not appear to be present in the instant case. Moreover, the Commissioner's analogy to *Wiebusch* relies on the proposition that the information in the Aktan letter "was already part of the record and was analyzed by the ALJ," (Comm'r's Br. at 12), which is not the case. In *Locklear*, the court rejected the claimant's argument that new evidence submitted to the Appeals Council (two treatment notes from a treating physician) created a reasonable probability that the outcome would have been different because (i) the new evidence was not inconsistent with other evidence from the medical source that the ALJ had appropriately considered and discussed, and

---

³ For these reasons, even if the Aktan letter is not considered a medical opinion as that term is defined under the Commissioner's regulations, it would still be medical evidence of record that is relevant to the ALJ's Listing analysis and the RFC assessment.

(ii) the new evidence was not inconsistent with the RFC limitations assessed by the ALJ. *Locklear*, 2022 WL 1132156, at *13. Here, though, the Aktan letter includes new information relevant to Plaintiff's functional abilities that appears inconsistent with the ALJ's listing analysis and RFC assessment, thereby making the instant case distinguishable.

### B. Symptom Evaluation

In light of the necessity for remand based on the new evidence submitted to the Appeals Council but not considered by the Commissioner, the court declines to address Plaintiff's argument that the ALJ erred in evaluating Plaintiff's statements about his symptom severity.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED and the case is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order.

This 23rd day of September 2025.

_____
KIMBERLY A. SWANK
United States Magistrate Judge